UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:11-cv-00109-TBR

JAMES MILLEA	Plaintiff

v.

FORD MOTOR COMPANY, *et al.*	Defendants


### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff James Millea's Motion to Alter, Amend, or Vacate the Court's Memorandum Opinion and Order at Docket No. 153, Memorandum Opinion at Docket No. 154, and Judgment at Docket No. 155 pursuant to Federal Rule of Civil Procedure 59. (Docket No. 156.) Defendant Ford Motor Company has responded. (Docket No. 158.) Plaintiff has replied. (Docket No. 161.) This matter is now fully briefed and ripe for adjudication. Plaintiff has also made a Motion for Oral Argument regarding the Motion to Alter, Amend, or Vacate. (Docket No. 157.) The Court finds that oral argument is unnecessary and, therefore, will **DENY** Plaintiff's Motion for Oral Argument. (Docket No. 157.) For the following reasons, the Court will **GRANT** Plaintiff's Motion to Alter, Amend, or Vacate. (Docket No. 156.)

The portions of the Court's Memorandum Opinion and Order granting Defendant's Motion *in Limine* at Docket No. 76 and granting in part Defendant's Motion *in Limine* at Docket No. 78 are **VACATED**. Upon reconsideration, both these Motions *in Limine* are **DENIED**. (Docket Nos. 76, 78.) The Court's Memorandum Opinion granting Defendant's Motion for Summary Judgment on the

crashworthiness/design defect claim, (Docket No. 153), is **VACATED**. Upon reconsideration, the Court **DENIES** Defendant's Motion for Summary Judgment. (Docket No. 75.)

The Court **ORDERS** a telephonic conference for **August 1, 2014, at 9:45 AM Central Time**.

BACKGROUND

On July 9, 2010, Plaintiff James Millea was involved in an automobile collision while operating a 2000 Ford Ranger.[1] (Docket No. 1, ¶ 10.) At the time of the automobile collision, that vehicle's airbag deployed. *Id.* Plaintiff alleges that he suffered injuries and damages as a result of this deployment. Specifically, Plaintiff alleges that he sustained third-degree burns to his right hand and fingers upon contact with the airbag inflator. (Docket No. 98, at 1-2.) There does not appear to be a dispute that these burns were a result of Plaintiff's right hand coming in contact with the driver's side airbag inflator after the collision. (*See* Docket No. 98, at 2.)

On July 8, 2011, Plaintiff filed his Complaint against Defendant Ford Motor Company and several others alleging a breach of the standard of care because the vehicle and the airbag system were defective in that they were negligently designed, manufactured, supplied, sold, advertised, distributed, and marketed. (*See* Docket No. 1, ¶ 16.) Specifically, Plaintiff alleges that the airbag deployed "with such force and heat so as to cause severe burns to the consumer and/or user" and that "the Defendants failed

---

[1] The collision occurred at an intersection in Murfreesboro, Tennessee. According to the Tennessee Uniform Police Traffic Crash Report, a vehicle driven by James C. Coleman struck the 2000 Ford Ranger driven by Plaintiff when Coleman attempted to make a left hand turn.

to properly instruct as to the use and/or warn all consumers and/or users of all dangers associated with the Vehicle and/or airbag." (Docket No. 1, ¶ 16.)

On April 21, 2014, the Court entered a Memorandum Opinion and Order on several pending motions *in limine* concerning Plaintiff's Expert, Ted Zinke. (Docket No. 153.) In that Memorandum Opinion and Order, the Court held:

> (1) Zinke would be permitted to give his general opinions on accident reconstruction and driver kinematics at trial. (Docket No. 153, at 8-13.)
>
> (2) Zinke's opinion and testimony on the alternative designs did not rest on a reliable foundation and, therefore, was excluded under *Daubert*. (Docket No. 153, at 14-18.)
>
> (3) Zinke's opinions regarding the National Accident Safety Survey (NASS) database would be permitted at trial. (Docket No. 153, at 18-21.)
>
> (4) Zinke's testimony that the design of the lower air bag cover flap caused or contributed to any injury to Plaintiff would be permitted at trial, but the testimony that the alternative designs would have prevented Plaintiff's injuries would not be permitted. (Docket No. 153, at 21-23.)

In light of the exclusion of Zinke's testimony on the alternative designs, this Court granted Defendant Ford Motor Company's Motion for Summary Judgment. (Docket No. 75.) This Court reasoned that without that testimony, Plaintiff was unable to establish the first element of a crashworthiness or design defect claim: an alternative safer design, practical under the circumstances. (Docket No. 154.)

STANDARD

The Sixth Circuit has consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented, *see Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citing *Sault Ste. Marie*

*Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *White v. Hitachi, Ltd.*, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation marks and citation omitted).[2] "It is not the function of a motion to reconsider arguments already considered and rejected by the court." *Id.* (citation omitted).

As another district court in this Circuit put it, "[w]here a party views the law in a light contrary to that of this Court, its proper recourse is not by way of a motion for reconsideration but appeal to the Sixth Circuit." *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 WL 2836788, at *1 (N.D. Ohio July 20, 2010) (internal quotation marks and citations omitted). Accordingly, the Sixth Circuit instructs that a motion for reconsideration should only be granted on four grounds: "Under Rule 59, a court may alter or amend a judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Furthermore, because there is an interest in the finality of a decision, this Court and other district courts have held that "[s]uch motions are extraordinary and sparingly granted." *Marshall v. Johnson*, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007) (citing *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)); *accord Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992).

---

[2] The Court notes that FRCP 59(e) requires that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." The Order dismissing Plaintiff's case was entered on April 21, 2014. (Docket No. 155.) Plaintiff's motion to reconsider was filed on May 19, 2014. (Docket No. 156.)

DISCUSSION

Previous Decision on Defendant's Motions *in Limine* at Docket Nos. 76 and 78

In its Motion to Alter, Amend, or Vacate, (Docket No. 156), Plaintiff argues that this Court overlooked significant evidence that supported Zinke's alternative design opinions and was sufficient to satisfy Defendant's *Daubert* challenge when it ruled on Defendant's Motions *in Limine* at Docket Nos. 76 and 78. Specifically, Plaintiff points out that Zinke offered numerous other alternative designs besides the Ford Taurus and Ford Escort. (*See* Docket No. 115-2, Exhibit 20 to Zinke Deposition.) However, the Court is well aware that Zinke posited designs, other than the Taurus and Escort, as alternative, safer designs. The same issues that the Court raised regarding Zinke's opinion on the Taurus and Escort designs would apply to the other alternative designs. To summarize, a single photograph, or even a small number of photographs, of an alternative design showing the absence of an airbag cover flap "fouling" on the steering wheel rim is unreliable from a pure probability standpoint. (*See* Docket No. 153, at 16-17.) By Zinke's own estimate the "fouling" only occurred in 13% of Ford Ranger cases. These alternative designs may "foul" at a much lower rate than the Ford Ranger design and may be safer. However, Zinke's apparent basis for that opinion—the small sample size of photographs depicting the flaps not fouling—was not reliable. Thus, even if the Court overlooked the abundance of other alternative designs, their existence is nevertheless irrelevant.

More concerning to the Court is Plaintiff's other argument, which essentially amounts to a contention that Zinke's review of the spatial and geometric characteristics

of the alternative designs provided an additional, reliable basis for his opinion. In relevant part, Plaintiff's motion states:

> As is seen in the alternative designs, the flaps do not get caught on the steering wheel rim and are allowed to close back much like a clam shell, thus offering protection to the occupant from the hot inflator. **Simple photographs of these alternative designs which clearly showed a spatial and geometric design would allow the jury to conclude that it is impossible with the use of these alternative designs for the flaps to become caught on the steering wheel rim. It is clear from a review of the spatial relationship of the module and wheel that the components are such that the cover flaps do not interfere with the steering wheel.** In fact, the spatial and geometric design of the alternatives makes it virtually impossible for the cover flaps to become caught on the steering wheel rim. Thus, the alternative designs virtually eliminate any risk of the injury to a driver like the Plaintiff in a vehicle equipped with one of the alternative designs because the hot inflator is covered following the airbag deployment. Candidly, Plaintiff believes Ford knew exactly what Mr. Zinke's points were with regard to the alternative designs and did not feel the need to ask for any explanation as to how the alternative designs worked.

(Docket No. 156-1, at 5) (emphasis added). Thus, Plaintiff takes issue with the Court's conclusion that Zinke's only basis for his opinion was his review of a few photographs of the alternative designs and his noting that the flap was not "fouled." In essence, Plaintiff argues the review of the alternative design photographs was not just for the purpose of noting whether the flap had "fouled," but also for the purpose of reviewing the "spatial and geometric design" of the steering wheel rim and air bag cover to determine if "fouling" was even a possibility with these designs.

Plaintiff points to two portions of Zinke's extensive, 175-page deposition for support for this proposition:

> Q: Is it fair to say that your opinion that these are safer alternative designs is based on the configuration of the wheel, the steering wheel, that is, and the airbag cover rather than an analysis of the design drawings?

Page 6 of 11

> A: Yeah.
> The basis for my opinion that these are better designs are basically the NHTSA tests and post-test photographs showing that the covers tend to come back to their original position. I mean, they don't — obviously the covers can't come completely back to their original position because you've got the airbag hanging out. But they do to a large extent, a much larger extent obviously, than the subject vehicle.
>     . . . .
> Q: When you say "alternative," are these alternative designs that you would find reasonably safe for their intended use, or, no, they are just alternatives?
>
> A: No. No. They are alternatives that show a characteristic whereby they provide protection for the occupant against a burn injury from the inflator. In other words, the airbag flaps don't hang up on the wheel rim. They tend to come back — try to come back to their original position.

(Docket No. 106-1, at 138-39, 163-64.) Plaintiff contends that "Ford successfully confused the Court about the nature of the alternative designs, which resulted in the Court concluding that the testimony was unreliable."[3] (Docket No. 156-1, at 10.) On the contrary, the Court understands the nature of the alternative designs. The only confusion that beset the Court was the precise basis for Zinke's opinion. Zinke's basis was never *clearly* articulated in his extensive deposition, spanning 175 pages, or his expert report. Notably, in both his deposition, (Docket No. 106-1), and expert report, (Docket No. 78-1), he does not once mention the words "spatial" or "geometric" in the context of discussing the steering wheel rim design. As a result, the Court made the apparently mistaken assumption that the only basis for his opinion was his determination that the alternative design photographs did not depict the airbag cover

---

[3] Plaintiff also focuses on a footnote, (Docket No. 153, at 18 n.8), in the Court's Memorandum Opinion and Order, arguing it indicates confusion by this Court. Admittedly, it appears there was a mistake in this footnote. The statement should have read "[t]his statement does not explain *what inherent in* the alternative designs prevent the flaps from becoming hung on the steering wheel rim such that the designs are safer than the Ford Ranger."

flaps "fouling." For the reasons already discussed, if his basis was premised only on the photographs depicting the flaps not "fouling," that basis is not reliable.

Notwithstanding the above, upon further review, the Court perhaps erred in finding that the only basis for Zinke's opinion was his determination that the photographs of the alternative designs showed the flaps did not "foul." It appears that Zinke's basis also included a review of the photographs to analyze the "configuration of the steering wheel and airbag cover."[4] The Court finds that this basis, unlike a review of a small sample size of alternative design photographs depicting the flaps not fouling, would be reliable because of Zinke's extensive experience and qualifications. Candidly, the Court felt the original call on this matter was close. In retrospect, the Court believes it read the basis for Zinke's opinion too narrowly, without giving reasonable inferences to the expert. After further consideration, it appears there is a reasonable basis for the expert's opinion. The criticism of this expert is best left for cross examination, and for the reasons previously discussed, (Docket No. 153), the Court found Zinke was qualified to give an opinion of this nature.

Accordingly, the portions of the Court's Memorandum Opinion and Order granting Defendant's Motion *in Limine* at Docket No. 76 and granting in part Defendant's Motion *in Limine* at Docket No. 78 are **VACATED**. Upon reconsideration, both these Motions *in Limine* are **DENIED**.[5] (Docket Nos. 76, 78.)

---

[4] Indeed, Defendant's own expert, Jeffery Pearson, conceded that the alternative designs had "a configuration in which the cover did not engage the rim," although he contends that they were not designed specifically for that purpose and that, in any event, the alternative designs would not have prevented Plaintiff's hand and finger injuries. (Docket No. 81-1, at 129-31.)
[5] The Court notes that Defendant made several other arguments for excluding Zinke's testimony. These arguments include Zinke's silence on the orientation of the steering wheel after the wreck, the fact that

Impact of Court's Reconsideration on Motions *in Limine* on Previous Memorandum Opinion Granting Defendant Summary Judgment

The Court's rationale for previously granting Defendant's Motion for Summary Judgment, (Docket No. 154), was that without Zinke's alternative design testimony Plaintiff was unable to establish the first element of a crashworthiness or design defect claim: an alternative safer design, practical under the circumstances. (Docket No. 154.) However, because the Court has vacated its previous Orders excluding that testimony, the Court must examine what impact, if any, the testimony's inclusion has on Defendant's Motion for Summary Judgment, (Docket No. 75).

I. Crashworthiness or Enhanced Injury Design Defect Claim

"The elements of a *prima facie* crashworthiness claim are: (1) an alternative safer design, practical under the circumstances; (2) proof of what injuries, if any, would have resulted had the alternative, safer design been used; and (3) some method of establishing the extent of the enhanced injuries attributable to the defective design." *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 41 (Ky. 2004). The third element is essentially causation. *See Estate of Bigham v. Daimler Chrysler Corp.*, 462 F. Supp. 2d 766, 777-78 (E.D. Ky. 2006). As to causation, "the plaintiff in a defective design action must produce evidence to 'justify a reasonable inference of probability rather than a mere possibility that the [alleged design defects] were responsible' for her injuries." *Stewart v. General Motors Corp.*, 222 F. Supp. 2d 845, 848 (W.D. Ky. 2002) (citation omitted).

---

Zinke failed to determine the speed at which the flaps return to their original position, Zinke did not review the actual design specifications, and Zinke admitted that there was a small possibility that the injuries could have still occurred with the alternative designs. (*See* Docket No. 100.) The Court finds these arguments concern the weight of the evidence, rather than its admissibility—particularly after taking into account Zinke's expertise/knowledge in this area and the nature of Plaintiff's injury.

II. Plaintiff is Able to Establish a *Prima Facie* Crashworthiness Claim

With Zinke's testimony on the alternative designs, Plaintiff is able to establish the first element: an alternative safer design, practical under the circumstances. Plaintiff is also able to establish the second element: proof of what injuries would have occurred if the alternative design had been used. Zinke testified that Plaintiff would not have sustained the burn injuries if the alternative design(s) had been used because the flaps would not have "fouled," thereby preventing his hand from being subjected to the heat from the inflator. (Docket No. 106-1, at 104-05.) Finally, Plaintiff is able to establish the third element of causation because Zinke's testimony and opinion reflect that, but for the alleged defective design, Plaintiff would not have sustained the burn injuries. Accordingly, the Court will **VACATE** its Memorandum Opinion at Docket No. 154 granting summary judgment to Defendant. Defendant's Motion for Summary Judgment on the crashworthiness/design defect claim, (Docket No. 75), is **DENIED**.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED Plaintiff James Millea's Motion to Alter, Amend, or Vacate the Court's Memorandum Opinion and Order at Docket No. 153, Memorandum Opinion at Docket No. 154, and Judgment at Docket No. 155 pursuant to Federal Rule of Civil Procedure 59 is **GRANTED**. (Docket No. 156.) The Court finds that oral argument is unnecessary and, therefore, will **DENY** Plaintiff's Motion for Oral Argument. (Docket No. 157.)

The portions of the Court's Memorandum Opinion and Order granting Defendant Ford Motor Company's Motion *in Limine* at Docket No. 76 and granting in part Defendant's Motion *in Limine* at Docket No. 78 are **VACATED**. Upon reconsideration, both these Motions *in Limine* are **DENIED**. (Docket Nos. 76, 78.)

The Court's Memorandum Opinion granting Defendant's Motion for Summary Judgment on the crashworthiness/design defect claim, (Docket No. 153), is **VACATED**. Upon reconsideration, the Court **DENIES** Defendant's Motion for Summary Judgment. (Docket No. 75.)

The Court **ORDERS** a telephonic conference for **August 1, 2014, at 9:45 AM Central Time**.

IT IS SO ORDERED.

Date:

cc: Counsel